**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JOEL H. DEROUIN,

                                  Plaintiff,

                - v -                                       Civ. No. 7:05-CV-211
                                                                            (LEK/RFT)

COMMISSIONER OF SOCIAL SECURITY,

                                  Defendant.

**APPEARANCES:**                             **OF COUNSEL:**

CONBOY, MCKAY LAW FIRM              LAWRENCE D. HASSLER, ESQ.
Attorney for Plaintiff
307 State Street
Carthage, New York 13619

HON. GLENN T. SUDDABY                WILLIAM H. PEASE
United States Attorney for the             Assistant United States Attorney
Northern District of New York
Attorney for Defendant
100 South Clinton Street
Syracuse, New York 13261-7198

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

      In this action, Plaintiff Joel Derouin moves, pursuant to 42 U.S.C. § 405(g), for review of a decision by the Commissioner of Social Security denying his application for disability insurance benefits (DIB).[1] Based upon the following discussion, this Court recommends that the Commissioner's decision denying Social Security benefits be **vacated and remanded** for further proceedings.

---

[1] This case has proceeded in accordance with General Order 18 which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Both parties have filed Briefs, though oral argument was not heard. Dkt. Nos. 6, Pl.'s Br., & 10, Def.'s Br. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(d).

## I. BACKGROUND

### A. Facts

The facts set forth in Derouin's Brief under the heading "STATEMENT OF THE CASE" as supplemented in the Commissioner's Brief under the heading "STATEMENT OF THE CASE" are adopted, with the exception of any inferences or legal conclusions expressed therein. Dkt. No. 6, Pl.'s Br. at pp. 2-6; Dkt. No. 10, Def.'s Br. at pp. 1-12. Generally, Derouin alleges a disability due to decaying nerve ends and tendons in joints due to diabetes mellitus. Dkt. No. 5, Admin. Tr. [hereinafter "Tr."] at pp. 13 & 46.

### B. Procedural History

On August 12, 2003, Derouin filed for DIB alleging a disability onset date of April 13, 1996, culminating to an inability to work on January 1, 2001. Tr. at pp. 39-41 & 45-54. The application was denied initially. *Id.* at pp. 27-32. On February 19, 2004, a Hearing was held before Administrative Law Judge (ALJ) James D. Kemper, Jr. (*id.* at pp. 238-73), who, on November 2, 2004, issued an unfavorable decision against Derouin (*id.* at pp. 9-19). On January 28, 2005, the Appeals Council concluded that there was no basis under the Social Security Regulations to grant Plaintiff's request for review, thus rendering the ALJ's decision the final determination of the Commissioner. *Id.* at pp. 4-7. Having exhausted all of his options for review through the Social Security Administration's (SSA) tribunals, Plaintiff now brings this appeal.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), the proper standard of review for this Court is not to employ a *de novo* review, but rather to discern whether substantial evidence supports the Commissioner's findings

and that the correct legal standards have been applied. *See Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *Urtz v. Callahan*, 965 F. Supp. 324, 325-26 (N.D.N.Y. 1997) (citing, *inter alia*, *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). Succinctly defined, substantial evidence is "more than a mere scintilla," it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938).

The ALJ must set forth the crucial factors supporting the decision with sufficient specificity. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). Where the ALJ's findings are supported by substantial evidence, the court may not interject its interpretation of the administrative record. *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); 42 U.S.C. § 405(g). Where the weight of the evidence, however, does not meet the requirement for substantial evidence or a reasonable basis for doubt exists as to whether correct legal principles were applied, the ALJ's decision may not be affirmed. *Johnson v. Bowen*, 817 F.2d at 986.

### B. Determination of Disability

To be considered disabled within the meaning of the Social Security Act, a plaintiff must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore, the claimant's physical or mental impairments must be of such severity as to prevent engagement in any kind of substantial gainful work which exists in the national economy. *Id*. at § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner follows a five-step analysis set forth in the Social Security Administration Regulations. 20 C.F.R. § 404.1520. At Step One, the

Commissioner "considers whether the claimant is currently engaged in gainful activity." *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). If the claimant is engaged in substantial gainful activity, he or she is not disabled and the inquiry ends. 20 C.F.R. § 404.1520(b). If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to Step Two and assesses whether the claimant suffers from a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. *Id.* at § 404.1520(c). If the claimant suffers from a severe impairment, the Commissioner considers at Step Three whether such impairment(s) meets or equals an impairment listed in Appendix 1, in Part 404, Subpart P of the Regulations. *Id.* at § 404.1520(d). The Commissioner makes this assessment without considering vocational factors such as age, education, and work experience. *Berry v. Schweiker*, 675 F.2d at 467. Where the claimant has such an impairment the inquiry ceases as he or she is presumed to be disabled and unable to perform substantial gainful activity. *Id.* If the claimant's impairment(s) does not meet or equal the listed impairments, the Commissioner determines the claimant's residual functional capacity (RFC),[2] which is utilized in both Steps Four and Five. 20 C.F.R. § 404.1520(e). If at Step Four, the Commissioner determines that the claimant cannot perform his or her past work, then at Step Five, the Commissioner considers whether the claimant can perform any other work available in the national economy. *Berry v. Schweiker*, 675 F.2d at 467; 20 C.F.R. § 404.1520(f).

Initially, the burden of proof lies with the claimant to show that his or her impairment(s) prevents a return to previous employment (Steps One through Four). *Berry v. Schweiker*, 675 F.2d at 467. If the claimant meets that burden, the burden then shifts to the Commissioner at Step Five to

---

[2] "Residual functional capacity" is defined by the Regulations as follows: "Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is what you can still do despite your limitations." 20 C.F.R. § 404.1545(a).

establish, with specific reference to medical evidence, that the claimant's physical and/or mental impairment(s) are not of such severity as to prevent him or her from performing work that is available within the national economy. *Id.*; 42 U.S.C. § 423(d)(2)(A); *see also White v. Sec'y of Health and Human Servs.*, 910 F.2d 64, 65 (2d Cir. 1990). In making this showing at Step Five, the claimant's RFC must be considered along with other vocational factors such as age, education, past work experience, and transferability of skills. 20 C.F.R. § 404.1520(f); *see also New York v. Sullivan*, 906 F.2d 910, 913 (2d Cir. 1990).

### C. ALJ Kemper's Findings

Derouin, along with Anthony Michael, a vocational expert, testified at the Hearing. Tr. at pp. 238-73. In addition to such testimony, the ALJ had Derouin's medical records consisting of treatment reports and opinions from various treating and/or examining physicians, including, 1) Collins Kellogg, M.D., Treating Physician; 2) James Pelletier, Treating Doctor of Podiatric Medicine; 3) Lorne A. Runge, M.D., Examining Physician; and 4) Grace Y. Burke, Treating Doctor of Optometry. *Id.* at pp. 72-228. Records were also obtained from St. Joseph's Hospital, Samaritan Medical Center, Watertown Internists, and Watertown Eye Center. *Id.*

The ALJ stated that Derouin met the nondisability requirements and was insured for benefits through June 30, 2003 (also referred to as the "date last insured" or "DLI"). *Id.* at p. 13. Using the five-step disability evaluation, ALJ Kemper found that 1) Derouin had not engaged in any substantial gainful activity since the alleged onset disability date; 2) he has severe medically determinable impairments, namely, coronary artery disease and diabetes mellitus; 3) his severe impairments did not meet nor medically equal any impairment listed in Appendix 1, Subpart P of Social Security Regulation No. 4; 4) he retains the RFC to perform a full range of light work and, as such, cannot perform his past

relevant work as a carpenter; but 5) based on Derouin's RFC, age, education, and vocational background, a finding of "not disabled" is directed by Medical Vocational Guideline Rules 202.13 and 202.14. *Id.* at pp. 13-18. After reviewing the administrative transcript, the Court finds that the ALJ did not apply the correct legal standards and his findings are not supported by substantial evidence of record.

### D. Derouin's Contentions

Plaintiff contends that the ALJ's decision denying benefits should be remanded because (1) the ALJ improperly discounted medical evidence in the record that was dated both prior and subsequent to the expiration of his insured status; (2) in determining Plaintiff's RFC, the ALJ failed to perform a function by function analysis and erroneously discounted Plaintiff's testimony regarding the limiting effects of his subjective symptoms; and (3) at Step Five, the ALJ erred by failing to question the vocational expert as to Plaintiff's ability to perform other work and by solely relying upon the Medical Vocational Guidelines, also known as the Grids, to make a disability finding. *See generally* Pl.'s Br.

### 1. Evidence Before and After DLI

Plaintiff contends that the ALJ erred by confining his "analysis of the medical evidence to those records generated prior to June 30, 2003." Pl.'s Br. at p. 8. Specifically, Plaintiff complains that the ALJ refused to recognize his diabetic neuropathy[3] simply because the actual diagnosis did not come about until September 2003, after his DLI. *Id*. at pp. 8-12. He further criticizes the ALJ's failure to discuss medical evidence that preceded the disability onset date and other evidence during the insured period. *Id.* Based on the discussion below, the Court finds that the ALJ did not improperly ignore

---

[3] Diabetic neuropathy is "a generic term for any diabetes mellitus–related disorder of the peripheral nervous system, autonomic nervous system, and some cranial nerves. This most common of the chronic complications of diabetes can affect either the peripheral or the autonomic nervous system, or both." STEDMAN'S ONLINE MEDICAL DICTIONARY, *available at* http://www.stedmans.com/section.cfm/45 (last visited July 28, 2008).

medical evidence.

To be entitled to DIB, a claimant must establish that he became disabled prior to the expiration of his insured status. *See* 42 U.S.C. §§ 423(a), (c) & (d); 20 C.F.R. §§ 404.130 (determination of insured status), 404.315 (eligibility for disability benefits), & 404.1512(c) (claimant's evidentiary responsibilities). In reviewing a disability application, an ALJ has the obligation to consider all relevant evidence. *See, e.g.*, *Cullinane v. Sec'y of Dep't of Health and Human Servs.*, 728 F.2d 137, 139 (2d Cir. 1984) (acknowledging the ALJ's obligation to "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts"). Thus, in determining the existence of an impairment, the ALJ may not summarily discount evidence simply because it was generated after a claimant's insured status expires. Indeed, the mere "fact that a diagnosis is not made contemporaneously within the period that a claimant is insured does not undercut the viability of a later diagnosis based upon medically acceptable techniques." *Gecevic v. Sec'y of Health and Human Servs.*, 882 F. Supp. 278, 286 (E.D.N.Y. 1995) (citing *Wagner v. Sec'y of Health and Human Servs.*, 906 F.2d 856, 861 (2d Cir. 1990)); *Dhanraj v. Barnhart*, 2006 WL 1148105, at *6 (S.D.N.Y. May 1, 2006). However, the mere existence of a diagnosis does not mean that such impairment relegated a claimant disabled, nor would an post-DLI exacerbation of a pre-existing impairment render the claimant disabled during the insured period. *See Vitale v. Apfel*, 49 F. Supp. 2d 137, 142 (E.D.N.Y. 1999) (citing *Arnone v. Bowen*, 882 F.2d 34, 41 (2d Cir. 1989) & *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991)).

Notably, an ALJ's obligation to *consider* all relevant evidence does not impose the onus to "specifically *address* each piece of evidence in his decision." *Jones v. Barnhart*, 2004 WL 3158536, at *6 (E.D.N.Y. Feb. 3, 2004) (emphasis in original) (citing *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984) for the proposition that not every conflict in the record needs to be reconciled by the ALJ).

In this case, the ALJ fulfilled his duty to consider all the relevant evidence when he stated he had carefully considered the entire record including Plaintiff's testimony at the hearing. Tr. at pp. 13-18; *see also Jones v. Barnhart*, 2004 WL 3158536, at *6 ("It is enough that the ALJ noted that he carefully considered the exhibits presented in evidence in reaching his decision . . . and that the crucial factors in any determination [are] set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." (internal quotation marks and citations omitted)).

Furthermore, the ALJ's opinion is replete with references to medical records post-dating the DLI. For example, in substantiating his finding that Plaintiff's later diagnosed diabetic neuropathy was not severe/disabling prior to the DLI, the ALJ referred to medical exhibits ranging from December 1992 through June 2004. *See* Tr. at pp. 15-16 (referencing Exhibits 5F, 6F, & 12F). The ALJ further referred to post-DLI evidence in assessing Plaintiff's credibility. *Id*. at p. 16 (referencing Exhibits 5F & 12F). The only record the ALJ seemingly discounted was the report of Lorne Runge, M.D., who examined Plaintiff once on July 3, 2003, and completed a functional capacity assessment, dated September 3, 2003, wherein he assessed that Plaintiff was limited to less than sedentary work. *Id*. at pp. 133-39. In his written opinion, the ALJ provided two justifications for affording little weight to Dr. Runge's assessments. First, Dr. Runge rendered his assessment after Derouin's DLI; and, second, the ALJ found Dr. Runge's opinion to be inconsistent with the overall medical record and Derouin's own testimony regarding his residual abilities. Had the ALJ rejected Dr. Runge's opinion solely because of the lack of temporal proximity within the insured period, we may be inclined to entertain Plaintiff's assessment of error. But the ALJ did not limit his justification in that regard. Plaintiff asserts that Dr. Runge is the only medical professional who rendered a RFC assessment and thus, the

ALJ was "bound to accept" the opinion, Pl.'s Br. at pp. 10-11. It is true that the only medical opinion regarding Plaintiff's functional limitations is provided by Dr. Runge, however, Plaintiff erroneously presumes that the Treating Physician Rule applies to Dr. Runge. The Treating Physician Rule posits that a treating physician's opinion as to the nature and severity of a claimant's impairment is entitled to "controlling weight" when it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see also Rosa v. Callahan*, 168 F.3d 72, 78-79 (2d Cir. 1999). A "treating physician" is the claimant's "own physician, osteopath or psychologist (including outpatient clinic and health maintenance organization) who has provided the individual with medical treatment or evaluation, **and who has or had an ongoing treatment and physician-patient relationship with the individual**." *Jones v. Apfel*, 66 F. Supp. 2d 518, 524-25 (S.D.N.Y. 1999) (quoting *Schisler v. Bowen*, 851 F.2d 43, 46 (2d Cir. 1988)) (emphasis added); *see also* 20 C.F.R. § 404.1502. The one-time examination by Dr. Runge hardly amounts to an "ongoing" treatment relationship. 20 C.F.R. § 404.1502.[4] Thus, contrary to Plaintiff's argument, since Dr. Runge only examined Plaintiff on a single occasion, he is not a Treating Physician and so the ALJ was under no obligation to confer controlling weight to any of Dr. Runge's medical opinions.

That is not to say that the ALJ may summarily discount without justification the medical

---

[4] According to the Regulations, the Commissioner considers a claimant to have
an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that [the claimant] see[s], or [has] seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the claimant's] medical condition(s). . . . [The Commissioner] will not consider an acceptable medical source to be [a claimant's] treating source if [the claimant's] relationship with the source is not based on [his or her] medical need for treatment or evaluation, but solely on [his or her] need to obtain a report in support of [his or her] claim for disability. In such a case, [the Commissioner] will consider the acceptable medical source to be a non-treating source.
20 C.F.R. § 404.1502.

opinion of an non-treating, examining doctor. Indeed, the Regulations direct otherwise. 20 C.F.R. §§ 404.1502 & 404.1527. In deciding what weight, if any, an ALJ should accord to medical opinions, a variety of factors are to be considered including "[t]he duration of a patient-physician relationship, the reasoning accompanying the opinion, the opinion's consistency with other evidence, and the physician's specialization or lack thereof[.]" *See Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993); *see also Schaal v. Apfel*, 134 F.3d 496 (2d Cir. 1998). Here, the ALJ determined that Dr. Runge's opinion regarding both the existence of diabetic neuropathy and the extent of Derouin's functional limitations was inconsistent with the overall medical record as well as Plaintiff's own testimony. Thus he accorded "little weight" to Dr. Runge's assessments. As explained more fully below, substantial evidence supports the ALJ's finding that Derouin's diabetic neuropathy was not a severe nor disabling impairment prior to his DLI and Dr. Runge's functional limitation assessment is inconsistent with other evidence.

Derouin has a long history of treatment for diabetes mellitus dating back to 1965, when he was fourteen years old. Effective treatment of this serious disease depends heavily on monitoring blood sugar levels. *The Merck Manual* 169-76 (17th ed. 1999). The medical evidence documents that over the years, Derouin has had poor control of this disease due to his refusal to check his blood sugar levels throughout the day. *See generally id.* at pp. 100, 106, 108-10, 114, 123-24, 128, 145, 207, & 222 (treatment notes documenting Derouin's refusal to check and maintain his blood sugar levels and his rejection of aggressive treatment for his insulin dependence). As a result of the poor control, Derouin has experienced certain complications associated with hyperglycemia.[5] While the ALJ acknowledged

---

[5] Hyperglycemia occurs when there is "abnormally increased content of glucose in the blood." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 794 (28th ed. 1994). On the other hand, hypoglycemia occurs when there is an "abnormally diminished concentration of glucose in the blood[.]" DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 806
(continued...)

some of these complications, he correctly noted that such impairments did, as of Derouin's DLI, render him disabled.

For example, Derouin has been diagnosed with coronary artery disease, an impairment the ALJ deemed to be severe. Derouin underwent successful percutanueous transluminal coronary angioplasty (PTCA) in 1993 and quadruple coronary arterial bypass surgery in 1996. *Id.* at pp. 72-81. He underwent a normal stress test in January 1999, except for a "marginal" worsening inferior defect. *Id.* at pp. 118 & 128. Additional testing confirmed normal right and left ventricular systolic and diastolic dysfunction. *Id.* at p. 123. A July 2002 stress test confirmed "very good" exercise tolerance with appropriate blood pressure response and no angina pectoris. *Id.* at pp. 109-12. Compared to a 1993 stress test, Derouin's exercise tolerance was "still very good" and there was "no real change" in reversible myocardial abnormality. *Id.* at p. 109. In November 2002, Plaintiff denied any change in his exercise tolerance and he routinely denied chest pain, pressure, palpitations, and lightheadedness. *Id.* at pp. 106, 114, 121-22, 124, & 128. The most recent electrocardiogram (EKG) taken in June 2004, one year after Plaintiff's DLI, revealed "nothing significant." *Id.* at pp. 207 & 219.

Derouin has also been diagnosed with diabetic retinopathy,[6] however, he received several laser treatments in 1998 for this condition, his Treating Physician, Collins Kellog, M.D., noted on June 12, 2001, that his retinopathy was stable, and he has retained 20/30 visual acuity.[7] *Id..* at pp. 121, 147, 168-

---

[5](...continued)
(28th ed. 1994).

[6] Diabetic retinopathy is the most common diabetic eye disease, caused by changes in the blood vessels of the retina. National Eye Institute, *available at* http://www.nei.nih.gov/health/diabetic/retinopathy.asp (last visited July 29, 2008).

[7] Visual acuity "is a measure of the spatial resolving power of the visual system; it indicates the angular size of the smallest detail that can be resolved. . . . In the diagnosis and monitoring of eye diseases that may affect vision, changes of visual acuity are often taken to indicate the presence and magnitude of change in the eye condition." The Eye Digest,
(continued...)

82, 183-86, & 189-90. In August 2002, Derouin was diagnosed with plantar fasciitis,[8] and, in February 2003, began receiving treatment for heel pain associated with heel spurs. In April 2003, Derouin began treatment with James Pelletier, D.P.M., for his complaints of painful heel spurs. Dr. Pelletier recommended stretching and strengthening exercises and the use of good supportive shoes. *Id*. at pp. 98-99. At the next visit, Derouin reported that the treatment helped considerably. *Id*. at pp. 97 & 109. Orthotics and flexion exercises were further recommended by Dr. Kellogg. *Id*. at p. 109. Plaintiff reported using the heel inserts in his shoes to combat his heel pain and felt improvement as a result. *Id*. at pp. 98-99, 103, 105, & 106. He also purchased new shoes with inserts, which he stated helped a "great deal." *Id*. at p. 100. And, while Plaintiff complained of pain in his feet for an extended period of time, on many occasions, Dr. Kellogg found his feet to be unremarkable. *See id.* at pp. 109, 114, 123-24, & 128.

At the initial consultation, in early April 2003, Dr. Pelletier diagnosed Plaintiff with early diabetic neuropathy relating to the inferior heel spurs. *Id*. at p. 98. Then, in July 2003, Dr. Runge diagnosed Derouin with diabetic neuropathy. *Id*. at p. 141. However, despite the diagnoses of this impairment, as the ALJ noted, treatment notes reveal very few complaints of joint or extremity pain prior to his DLI. Plaintiff complained of left shoulder pain in June 2001, but a magnetic resonance imaging (MRI) revealed no tear in the rotator cuff and subsequent surgery improved his range of motion and decreased his pain. *Id.* at pp. 120-21. Then, in August and November 2002, Dr. Kellogg

---

[7](...continued)
*available at* http://www.agingeye.net/visionbasics/healthyvision.php (last visited July 29, 2008). In determining visual acuity, generally the larger the second number is, the worse a person's vision becomes. *Id.* 20/20 vision is considered normal whereas 20/200 vision or worse is considered as the legal definition of blindness; a person must possess 20/40 vision in order to receive a driver's license. *Id.*

[8] Plantar fasciitis, also referred to as aponeurosis plantar, is a condition wherein "bands of fibrous tissue radiat[e] toward the bases of the toes from the medial process of the tuber calcanel." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 107 (28th ed. 1994).

noted that Plaintiff showed very good exercise tolerance but was limited by leg fatigue and dyspnea.[9] Thereafter, on February 25, 2003, Plaintiff denied having any muscle pain, weakness, or fatigue. *Id.* at p. 106. Also, the medical records show that Plaintiff did not complain of nor was he treated for numbness or weakness in the hands, arms, and legs or joint pain in the shoulders, elbows, wrists, hips, knees, and ankles, which are symptoms typically associated with diabetic neuropathy. *See generally id.* at pp. 72-228.

Dr. Runge's assessment is also contrary to Plaintiff's own testimony regarding his functional limitations. Dr. Runge determined Plaintiff could only lift and carry two pounds, *id.* at p. 134, however, Plaintiff testified that he could lift thirty pounds, *id.* at p. 262. Furthermore, Dr. Runge provides assessments without citing medical evidence as support. For example, he stated Plaintiff was limited in his ability to stand, walk, sit, push, and pull, but did not provide the extent of these limitations nor the basis for his conclusion. *Id.* at p. 134. While Plaintiff testified that he had trouble sitting, standing, walking, reaching, and bending for long periods, such limitations are not specifically noted in any medical record from his Treating Physician, Dr. Kellogg or his Treating Podiatrist, James Pelletier, M.D., or any other doctor.[10] *See id.* at pp. 97-103, 105-14, 116-24, 128-29, 145, 207, 222-24, 226, & 252-62. Dr. Runge also stated, again without providing further detail, that Plaintiff had other limitations and that sustained activity aggravated his pain. *Id.* at p. 134. However, these findings are not specifically corroborated in any medical record presented by the others doctors. *See id.* at pp. 97-103, 105-14, 116-24, 128-29, 145, 207, 222-24, & 226. In light of the paucity of medical evidence

---

[9] Dyspnea refers to "[d]ifficulty in breathing, often associated with lung or heart disease and resulting in shortness of breath." THE AMERICAN HERITAGE MEDICAL DICTIONARY 246 (Revised ed. 2007).

[10] On April 27, 2004, Dr. Kellogg made a note that he stressed to Plaintiff the importance of walking at least two hours weekly. Tr. at 223.

cited by Dr. Runge to corroborate his findings and the significant contradictory evidence in the record, the ALJ correctly accorded little weight to Dr. Runge's assessment.

Accordingly, we find that the ALJ did not improperly ignore medical evidence and his decision to afford little weight to Dr. Runge's diagnosis and assessment is supported by substantial evidence.

### 2. RFC

In evaluating Plaintiff's RFC, the ALJ stated that "[b]ased upon the overall medical record and the claimant's testimony, and giving the claimant the benefit of doubt, the undersigned finds the claimant retained the residual functional capacity to perform a full range of light work on June 30, 2003, the date he was last insured for Disability Insurance Benefits." Tr. at p. 16. Based upon that exertional classification, the ALJ determined at Step Four that Derouin could not return to his past work, which he classified as "heavy" work. *Id*. Then, the ALJ considered Derouin's age, education, vocational background, and after defining the exertional parameters of light work, applied the Grids at Step Five to find Plaintiff not disabled. *Id*. Plaintiff alleges that the ALJ's RFC assessment is not supported by substantial evidence and the ALJ failed to do a function-by-function assessment of Derouin's ability to do work-related activities. Pl.'s Br. at pp. 12-14. Defendant asserts the RFC assessment is supported by substantial evidence, but does not address Plaintiff's function-by-function argument.

The Regulations direct the Commissioner to assess a claimant's RFC as a basis for determining the particular types of work the claimant may be able to perform despite the existence of physical and/or mental impairments. *See* 20 C.F.R. § 404.1545(a). In determining RFC, the ALJ can consider a variety of factors including a treating physician's or examining physician's observations of limitations, the plaintiff's subjective allegations of pain, physical and mental abilities, as well as the

limiting effects of all impairments even those not deemed severe. *Id.* at § 404.1545(a).

In the case at bar, the ALJ's failure to develop a full record and conduct a function-by-function assessment of Plaintiff's RFC constitutes reversible error. Only one physician provided a functional assessment – Dr. Runge – and this opinion was correctly given little weight due to its inconsistency with other evidence and lack of corroborating or supportive evidence. This left the ALJ with no other assessments on which to provide him guidance in formulating Plaintiff's RFC. Given the remedial intent of the Social Security statute and the non-adversarial nature of benefits proceedings, the ALJ had an affirmative duty, even if the claimant was represented by counsel, to develop the medical record if it was incomplete. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999); 20 C.F.R. § 404.1512(d). In furtherance of the duty to develop the record, the ALJ should have re-contacted medical sources if additional information was needed to reach a determination. 20 C.F.R. § 404.1512(e);[11] *Rosa v. Callahan*, 168 F.3d at 79-80 (noting that where there are gaps or ambiguities in the record, the ALJ bears the affirmative obligation to develop the record). It does not appear that any attempt was made to garner the opinion of any treating physician or other medical source by way of letters, telephone calls, or subpoena. *See Gray v. Astrue*, 2007 WL 2874049, at *6-7 (S.D.N.Y. Oct. 3, 2007) (remanding because the ALJ failed to properly develop the record when the treating physician responded that he could not complete a questionnaire sent by the ALJ and the ALJ did not provide more time to the physician to gather information); *Suriel v. Comm'r of Soc. Sec.*, 2006 WL 2516429, at *5-6 (E.D.N.Y. Aug. 29, 2006) (remanding for failing to fully develop the record); *Rosado v. Barnhart*, 290 F. Supp. 2d 431, 440-41 (S.D.N.Y. 2003) (remanding due to ALJ's failure to fill in gaps in the record); *Rosa v.*

---

[11] The Regulations establish the S.S.A.'s obligation to re-contact medical sources when the evidence received from a treating physician "is inadequate for [the S.S.A.] to determine whether [a claimant] is disabled[.]" 20 C.F.R. § 404.1512(e).

*Apfel*, 1998 WL 437172, at *4 (S.D.N.Y. July 31, 1998) (remanding because the ALJ failed to follow-up on a request to receive a functional assessment).

The ALJ further erred by failing to do a function-by-function analysis of Derouin's RFC before expressing it in terms of an exertional category, *i.e.*, light work. In assessing a claimant's RFC, the ALJ "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. § 404.1545 and § 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." Social Security Ruling (S.S.R.) 96-8p,1996 WL 374184, at *1-2, *Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims* (S.S.A. 1996); *see also Hogan v. Astrue*, 491 F. Supp. 2d 347, 354 (W.D.N.Y. 2007); *Mardukhayev v. Comm'r of Soc. Sec.*, 2002 WL 603041, at *5 (E.D.N.Y. Mar. 29, 2002). Furthermore, the RFC assessment must address an "individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."[12] S.S.R. 96-8p, 1996 WL 374184, at *1.

As explained in S.S.R. 96-8p, RFC "must not be expressed initially in terms of the exertional categories of 'sedentary,' 'light,' 'medium,' 'heavy,' and 'very heavy' work because the first consideration at [Step Four] is whether the individual can do past relevant work as he or she actually performed it." *Id*. at *3.

> RFC may be expressed in terms of an exertional category, such as light, if it becomes necessary to assess whether an individual is able to do his or her past relevant work as it is generally performed in the national economy. However, without the initial function-by-function assessment of the individual's physical and mental capacities, it may not be possible to determine whether the individual is able to do past relevant work

---

[12] A "'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." S.S.R. 96-8p, 1996 WL 374184, at *1.

>as it is generally performed in the national economy because particular occupations may not require all of the exertional and nonexertional demands necessary to do the full range of work at a given exertional level.

*Id.*

Here, the ALJ improperly determined that Plaintiff could do light work before assessing his work-related abilities on a function-by-function basis. In this regard, the ALJ failed to specify Derouin's exertional limitations, such as sitting, standing, walking, lifting, carrying, pushing, and pulling. He further failed to specify Derouin's non-exertional limitations (if any), such as stooping, climbing, reaching, handling, seeing, communicating, hearing, speaking, etc. And, because the ALJ improperly assessed Derouin's RFC, we are unable to review the ALJ's Steps Four and Five determinations. *See Brown v. Barnhart*, 2002 WL 603044, at *5-7 (E.D.N.Y. Apr. 15, 2002).

### III. CONCLUSION

In light of the ALJ's failure to fully develop the record and his erroneous assessment of Derouin's RFC, the proper avenue is to remand this matter for further proceedings. *See* 42 U.S.C. § 405(g); *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2004); *Rosa v. Callahan,* 168 F.3d at 82-83; *Verginio v. Apfel*, 1998 WL 743706, at *2 (N.D.N.Y. Oct. 23, 1998). On remand, the Commissioner should re-contact Derouin's Treating Physicians to provide opinions regarding Plaintiff's functional limitations as of his DLI. Upon further development of the record, the case should be remanded back to an ALJ to properly assess Derouin's RFC. After performing a function-by-function analysis, the ALJ shall recite Derouin's RFC with proper reference to medical records. Then, the ALJ shall determine whether Plaintiff's RFC allows him to perform his past work and, if necessary, any other work. Whether testimony from a vocational expert is necessary for the Steps Four and Five determinations and whether sole reliance on the Grids is appropriate are matters best left to the ALJ.

**WHEREFORE**, it is hereby

**RECOMMENDED**, that the Commissioner's decision denying disability insurance benefits be **VACATED AND REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g); and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Date: August 18, 2008
Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge